ALFRED P. ROBINSON, Administrator *de bonis non*, of PETER ROBINSON deceased v. CHARLES TUNNELL Administrator of ARTHUR MILBY deceased.

In an inquisition upon a writ of elegit, it is the duty of the sheriff to hear and decide every question arising in regard to the competency of witnesses and the admissibility of evidence, for it is not the province of the jury to determine such questions, and he cannot submit, or delegate such a power to them.

So far as the execution of the writ of elegit is merely ministerial, it may be performed by the sheriff's deputy.

The writ of elegit is not a common law writ, even in England, but is founded upon and given by the Statute of *Westm. 2nd.* (13 *Ed.* 1. *chap.* 18.); although it is different there in several respects, from what it is under the statute of this State, whilst in others it is essentially the same.

Both by the practice there, and by the practice here, on entering upon the execution of a writ of elegit, the sheriff is in all cases to empanel a jury of twelve men who must be duly qualified to make inquiry in that country of all the goods and chattels of the defendant and to appraise the same, and also to inquire as to the seizin and value of all his lands and tenements which he had at the time of the recovery of the judgment, or at any time thereafter; but here the jury is only to inquire as to the seizin and value of the lands and tenements which the defendant had when the judgment was recovered and at any time afterward; and upon such inquisition it was formerly the practice there, for the sheriff to deliver all the goods and chattels, except beasts of the plough, and a moiety of the lands to the plaintiff, on which the goods and chattels became his absolute property at the price of their appraisement or valuation, but to hold the moiety of the lands only until the residue of the debt should be levied and satisfied. But this practice is no longer pursued by the sheriff in that country, for he now only delivers legal possession of the land to the plaintiff on the writ of elegit, and leaves him to bring his action of ejectment on the return of the writ and inquisition to obtain the actual possession. Under the statute of this State, however, if the defendant in the writ, or any one holding under him, is in possession of the land, the jury are only to inquire into the seizin and value of it, and whether it is liable to be taken in execution for the debt, and if they find the defendant, or any person holding under him, in possession, it is made the duty of the sheriff, without inquiring into the title of the defendant thereto in such case, to remove the defendant, or the person so in possession, and to deliver the premises to the plaintiff, or his agent, not the one-half, as under the English statute, to hold for an indefinite period, until the debt is satisfied, but the whole, until out of the rents and profits the debt is paid, provided the term shall

not exceed seven years.  But if upon inquiry the jury shall not find the defendant, nor any one holding under him, in possession of the lands and tenements mentioned in the writ, but other person or persons in possession thereof, then the sheriff here is not, in such case, to remove the person, or persons in possession, but the jury is to proceed further in their inquisition and inquire also into the title of the defendant thereto, and whether the same are liable to be taken in execution for the debt; and if it be so found, the Court will, upon the return of the writ and inquisition, on the application of the plaintiff, award a writ in the nature of a writ of *habere facias possessionem* to put him in possession of the premises.  For in neither case, is it necessary for him under the statute of this State, as under the practice in England, to resort to an action of ejectment to obtain the actual possession.  The finding of the jury upon an inquisition however, is not conclusive under the statute of this State, but a person removed from lands under a writ of elegit, or any other person may maintain an ejectment to recover possession of the same, notwithstanding such finding, if the land was not liable to be taken for the debt in question.

The inquisition must in all cases, include an inquiry into the seizin, value, quality and location of the land, and contain a description of it, as well as an inquiry into the fact whether it is liable to be taken in execution for the debt; and when the title of the defendant in the writ is to be inquired into pursuant to the provisions of the statute, the inquisition should also state and set forth his title thereto as found by the jury, as the grounds on which the Court may award the writ in the nature of a writ of *habere facias possessionem* on the application of the plaintiff.

But it is not sufficient for the jury to find in any case simply, that the lands and tenements mentioned in the writ, were not liable to be taken in execution for the debt, without disclosing in the inquisition, the grounds and reasons for such a conclusion on their part.  Such a return and inquisition held insufficient.


The plaintiff had obtained a judgment in the Superior Court for Sussex County against the defendant, on a writ of *scire facias* upon a judgment of several years standing, recovered by Peter Robinson against Arthur Milby, on which he had sued out a writ of elegit against the administrator and terre tenants of Milby, and on which he had afterwards obtained a rule to show cause wherefore the elegit and inquisition held thereon, should not be set aside. On the hearing of the rule it appeared in evidence, that the inquisition on the elegit was mainly held and

conducted by his deputy in the absence of the sheriff, who was present but a short time, and that his name to the return of the writ and inquisition, was in the hand writing of his deputy and subscribed thereto by his authority. It was also proved that the witnesses were summoned by the parties respectively to attend the inquiry, and a question having been raised between the counsel during the progress of it, as to the legal competency of some of the witnesses and the admissibility of their testimony, whilst the sheriff was present and conducting it in person, he declined to decide the question himself, and submitted it to the jury of inquest, to determine whether such witnesses should be sworn and admitted to testify in regard to the matter and which was decided by a majority of them, and thereupon their testimony was admitted. It also appeared by the return of the writ and inquisition that the sheriff had not inquired into the annual value of the rents and profits of the lands, tenements and hereditaments taken in execution as formerly the lands of Arthur Milby deceased, and now in possession of the terre-tenants; nor whether he found the defendant, or any person holding under him in possession of the lands and tenements mentioned in the writ; but it simply appeared by the return thereof, that the inquiry was held by him at the time stated, and that the said lands, tenements and hereditaments were not liable to be taken in execution for the debt and damages in the said writ mentioned.

*James A. Bayard*, for the plaintiff: The writ of elegit at common law, is very different from the writ of elegit in this State under our statute. At common law, it was an alternative writ; for the plaintiff might either sue out a *fieri facias* and sell the goods, or he might sue out an *elegit*, on which the sheriff delivered the goods of the defendant to him at a valuation of the same, and if they were not sufficient to satisfy the debt, then he was commanded by the writ to deliver in addition thereto to the plaintiff, one

half of the lands and tenements of the defendant.    But before this could be done by the sheriff, the rental value of the land had to be inquired of by him through a jury called for that purpose; and if the defendant thereupon refused to yield the possession of the land to the plaintiff, the latter could not have a writ of *habere facias possessionem* on the return of the elegit, to put him in possession, but he was obliged to resort to an action of ejectment to recover and obtain the possession of the one-half thereof. Under the laws of this State, however, lands and tenements were always liable to be siezed and taken in execution and sold for debt, and under our statutory provisions in regard to the writ of elegit, the proceeding is quite different.    For here no sale of the land can be made by virtue of any execution process, and no writ of elegit can issue to put the plaintiff in possession of it, only where no sufficient personal estate of the defendant can be found to satisfy the debt upon judgment and execution obtained, although lands and tenements under our statutes, are liable to be seized and taken in execution on a writ of *fieri facias*, but not to be sold until after it has been ascertained and determined by a previous inquisition of office by the sheriff, that the yearly rents and profits beyond all reprises, of such lands and tenements will not be sufficient, within seven years, to satisfy the debt, or damages, and costs in such execution; and it is only when it has thus been determined, on such previous inquisition, that the yearly rents and profits, beyond all reprises, of the lands and tenements, will be sufficient, within seven years, to satisfy the judgment, as has been done in this case, · that the writ of elegit can be issued here; under which, in the words of our statute, "the lands and tenements inquired on are to be delivered to the plaintiff, to be held until the debt, or damages, and costs are levied by a reasonable extent, in the same manner as lands are delivered upon writs of elegit in England."    The statute then proceeds further to provide that if the sheriff on entering upon lands and tenements to execute a writ of elegit, shall

find the same in the possession of the defendant in the writ, his executors, or administrators, or any person holding under him, or them or any of them, he shall remove the person, or persons so in possession, and deliver the premises to the plaintiff, or his agent, without inquiring into the defendant's title thereto ; but if, on the contrary, the sheriff upon executing a writ of elegit, shall not find the defendant, nor any person holding under him, in possession of the lands and tenements mentioned in the writ, he shall, upon inquiring the value of such lands and tenements, also inquire by the same jury, upon oath, or affirmation, into the title of the defendant in the elegit to the premises therein mentioned, and shall certify and return such inquisition annexed to the writ under which it is made. In all of which respects it will be seen that the writ of elegit here, which is but a special and limited writ of elegit under our statute, differs very materially from the writ of elegit at common law.

Now the first objection which we have to urge to the inquisition and return in this case, which appears upon its face, is this ; the sheriff has inquired into the title to the land, (and this appears only by implication, for he does not expressly say so,) without saying, or returning whether he found the defendant in the writ, or any one holding under him, in possession, or not, and which he could only do, in case he did not find the defendant, nor any person holding under him, in possession of the land, pursuant to the terms of the statute. Besides, as we have seen, the statute requires that if the sheriff upon executing the elegit, shall not find the defendant in the writ, nor any one holding under him, in possession of the land he shall, upon inquiring the value of the land, also inquire by the same jury into the title of the defendant to the premises, and certify and return such inquisition annexed to the writ under which it is made. But before the sheriff, according to the true meaning and construction of this provision of the statute, could inquire into the title of the defendant to the premises, he was bound first to in-

quire as to the value of them; because by the same jury
by which he was to inquire the value, he was to inquire
into the title of the defendant to them, and which clearly
imports that the value of them was first to be inquired
into and ascertained.   In this case, however, there was
no inquiry at all, as to the value of the land, which was
always necessary in a writ of elegit both at common law
and under the statute, because without it, the plaintiff
could not have his action of ejectment for the land.

Again, it appears that the jury were to inquire whether
the lands mentioned in the elegit were liable to be taken
in execution under it, whereas it should have been to in-
quire of their value and also as to the title of the defend-
ant to them, in case the sheriff should not find him, nor
any holding under him, in possession of them; and this
involved the simple inquiry whether the defendant Ar-
thur Milby in this case, was seized of the land at the time
of the rendition of the original judgment against him, or
at any time afterward, and which would be a fact compe-
tent for the jury to find and determine; but it would never
do to allow the jury to enter into a general inquiry as to
the legal title to the premises and to make a general re-
turn, such as that the lands were, or were not, liable to
be taken in execution on the writ.

Another objection which we take to the writ, inquisi-
tion and return is, that the jury were to inquire if the
lands mentioned in the writ were liable to be taken in
execution to satisfy a judgment recovered by Thomas
Robinson, the former administrator of Peter Robinson
deceased, against Charles Tunnell administrator of Arthur
Milby, deceased, in the year 1857; instead of which it
should have been to satisfy the original judgment entered
many years ago in the life-time of the original parties
to it, on which the *scire facias* was issued in which the
judgment of 1857 was recovered, and which was merely a
judgment that the plaintiff in the *sci. fa.* should have ex-
ecution on the original judgment, and on which the exe-

cution must be issued, and not upon the judgment in the *sci. fa.*\* .

*W. Saulsbury,* for the defendant : As to the objection taken on the other side, that there was no inquiry in regard to the value of the land by the jury, he would respectfully ask why should there have been any such inquiry, and where was the necessity for it, in this case, since the jury found and have so returned the fact, that the lands are not liable to be taken in execution for the debt ? If the jury were satisfied upon the inquiry made that the lands in question were not liable for the debt, it was not necessary for them, he apprehended, to enter into any inquiry as to the value of them. As to other objections which had been taken, rather to the writ itself than to the return thereon, he thought them equally unsound ; but, if they should be deemed otherwise, neither himself, nor the parties for whom he appeared, were in any degree responsible for the errors insisted on, as the counsel for the plaintiff, he supposed, had had the direction and control of his own process, and were alone accountable for the form and manner in which it had been issued. He also contended that it was competent for the sheriff to delegate his authority to his deputy, to do all that had been done by the latter in the case ; and the submission by the sheriff to the decision of the jury, of the questions raised during the holding of the inquisition, in regard to the competency of witnesses, if not approved, it was, at

---

\* NOTE.—But this last point not being covered by the affidavit on which the rule was granted, Mr. Bayard afterwards moved to set aside the writ of elegit on this distinct ground. The last exception he would take was that the execution of a writ of elegit and the necessary inquiries to be held thereon, were not ministerial acts, such as the sheriff could delegate to his deputy to perform. *Carlisle v. Carlisle's Admr.* 2 *Harr.* 318. Nor was it competent for the jury to decide on the inquiry, questions arising as to the admissibility of witnesses and evidence, but it was the province and duty of the sheriff to determine all such questions.

least, not opposed by the counsel for the plaintiff then present.

*E. D. Cullen,* on the same side : The writ of elegit in this case itself alleged that the parties for whom we appear, were in possession of the land, and there was no dispute, or denial at any time as to this fact.   They were in possession it is true, and never denied it, or put the plaintiff to any proof of it; but they did deny and always have denied and still most solemnly aver and deny, that these lands were, or are liable to be taken in execution for the debt and on the judgment in question.   This was, and is, and ever has been, the only controversy and the only issue involved in the case so far as they are concerned, or have any connection with it.   Now, what is the meaning of our statute on this subject?   The existing law in regard to it, is to be found in the *Revised Code,* 395, 396, and provides as has before been stated, that if the sheriff upon executing a writ of elegit, shall not find the defendant, nor any one holding under him, in possession of the lands and tenements mentioned in the writ, he shall, upon inquiring the value of such lands and tenements, also inquire by the same jury, into the title of the defendant in the writ, to the premises therein mentioned, and certify and return the same &c.   But by a preceding section of the statute, if he finds the defendant in the elegit, or any one holding under him, in possession of the lands mentioned in the writ, the only duty then and in that case required of him, is simply to remove him from the possession and to deliver the premises to the plaintiff in the writ, without inquiring into the title of the defendant thereto.   Now, the provisions of these two sections must be taken and construed together, and so taken and construed, what do they mean ?   It will not do in this, nor perhaps in hardly any other case in the interpretation of statutes, to adhere strictly to the literal import of the terms used, but we must be governed rather by the design and object of the legislature in enacting

19

them, and the propriety and necessity of the provisions to effect the ends contemplated by them. But in this case the sheriff neither found the defendant in the writ, nor any one holding under him, in possession of the lands mentioned in it, and on proceeding to inquire by the jury into the title of the defendant, as he was required to do in that case, to the premises, he and they found that he had none whatever to them, and has so returned to the court; for that is the true meaning and necessary signification of the return, although it is expressed in different language, viz: that they find " that the lands and tenements in the said writ mentioned, are not liable to be taken in execution for the said debt." Well, such being the finding of the jury, or in other words, that the defendant had no title whatever to them, and that they therefore were not liable to be taken in execution for the plaintiff's debt against the defendant, where could be the reason, or wisdom, the propriety, or necessity in such a case, for either ascertaining, or returning the value of the land? The only reason which the counsel for the plaintiff has assigned for it either at common law, or under the statute, shows that it can have no application here, and that there can be no necessity for it in such a case as the present. That reason was, that the plaintiff in the elegit might afterwards have his action of eject-ment to recover the land from the defendant. Well, take it for all it is worth, and the reason, he must say, did not strike him as very satisfactory, what right of action in ejectment can the plaintiff possibly have to recover the land in such a case as this, when the return to the in-quisition expressly is that the land is in no wise liable for his debt? Why, none whatever.

But objection is also made to the writ, inquisition and return, because the sheriff was commanded by the writ to inquire by the jury whether the lands mentioned in it were liable to be taken in execution to satisfy the judg-ment recovered by Thomas Robinson the former admin-istrator of Peter Robinson against the administrator of

Milby in 1857, instead of which it should have been to satisfy the original judgment recovered twenty years ago, or more, in the life time of the original parties, and which the judgment in 1857 was on a *scire facias* merely to revive; and this objection, if he understood it, was intended to raise two questions, although neither of them, he believed, was legitimately presented by the facts set forth in the affidavit on which the rule had been granted.   The first of these questions was, whether the mandate, or exigency of the writ was too broadly stated in requiring the inquiry to be, in the terms employed in it, "whether the lands mentioned in it were liable to be taken in execution to satisfy" the debt in question, and which would open the general inquiry as to their liability for it, and embrace and cover every matter, both of law and fact, which might be urged by way of defence against the plaintiff's claim; or whether the jury was only to inquire, if Arthur Milby was seized and possessed of the lands at the date of the recovery of the original judgment, or at any time afterward, and also into the value of the land, and to return their inquisition as to these two facts merely to the court; and the second of these questions was, whether the writ was erroneous in requiring this latter inquisition to be, if the lands were liable to be taken in execution to satisfy the judgment recovered on *scire facias* by the administrator of the deceased plaintiff against the administrator of the deceased defendant in 1857, instead of to satisfy the original judgment recovered long since in the life time of those deceased parties.   In reply to the first of these objections he would say that the words of the writ in the respect referred to, were the words invariably adopted, and the form of the writ was in all things, he believed, in the usual form of writs of elegit issuing out of the courts of this State under our statute, if not in the form of the writ of elegit at common law; although his impression distinctly was, the words and the form of the writs were substantially, if not identically the same at common law.   All writs of ancient, or common law

origin, used and employed by the courts of this State, were introduced and imported by our ancestors with the body of the common law as modified by early statutes of the Parliament of England, and the forms of judicial writs and legal process so far as they have been adopted and recognized in our practice, were merely transcripts, or at all events were substantially the same as the forms of such writs then and still used in the practice of the courts in that country, and the writ of elegit soon introduced and adopted here in our colonial statutes, constituted no exception to this general observation; and the general finding and inquisition of the jury and returned by the sheriff in this case, it could not be denied, was directly and most pertinently responsive to the general order or command of the writ, that is to say, whether the lands mentioned in it were liable to be taken in execution for the said debt, and which the jury by their finding answer directly and in *totidem verbis* that they were not; and as this was the writ of the plaintiff and the specific inquiry directed by him, and the jury was ordered and summoned at his instance to determine the question, it was at least, no hardship to insist that he was estopped and concluded by it.  As to the other, or second objection, he would reply to it in a very few words, as he did not deem it necessary to dwell long on the point which it presented; and his answer to it was, that if there was an error in the words of the writ in directing the inquiry to be, whether the lands were liable to be taken in execution to satisfy the judgment recovered in 1857 on the *scire facias* between the administrators of the original and deceased parties, the inquiry was in effect and in point of fact on the original judgment recovered in their life time, as the debt and lieu of that judgment was the said debt to be satisfied, as without the original debt and lieu of that judgment, there never could have been any claim on the part of the plaintiff to sell the lands; and it was so known and considered by all when the inquiry was held.  He should add nothing to what

his colleague had said on the other exceptions raised in the case.

*Mr. Bayard* replied.

*By the Court:* On several grounds we must make the rule absolute in this case.  For in the first place, there was great irregularity in executing the writ.  It was the duty of the sheriff to hear and decide every question arising as to the competency of witnesses and the admissibility of evidence on the inquiry before the jury.  It was not the province of the jury to determine such questions, nor could the sheriff submit, or delegate such a power to them.  As to the exception, however, taken by the plaintiff generally, to the execution of the writ by his deputy, it has been decided in England that the bailiff of a liberty may execute an elegit by warrant from the sheriff.  In the case alluded to, the question was formally made whether the bailiff of a liberty could make an inquisition and extent on an elegit by warrant from the sheriff directed to him, which the court decided he might.  *Sparrow v. Mattersook et al. 3 Croke* 319.  And we consider it is a ministerial act of the sheriff, which under the laws of this State, so far, at least, as it was executed in this case by his deputy, it was competent for his deputy to perform.

The writ of elegit is not a common law writ, even in England, but is founded on the Statute of *Westminster* 2d. (13 *Edw.* 1 *Chap.* 18) and is given by it; although it is different there in several respects, from what it is under our statute, whilst in others, it is essentially the same.  By the chapter of the statute of *Westm.* 2, referred to, the plaintiff in a judgment, or recognizance might *elect* (from which the writ afterwards took its name) to have execution of all the goods and chattels, except beasts of the plough, and a moiety of the lands of the defendant, and upon which the sheriff could not sell the former, but delivered them at an appraisement, with a moiety of the

lands to the plaintiff to hold *quousque debitum fuerit levatum per rationabile pretium et extentum*, or to hold until the debt was levied or paid by reasonable price for the goods, *et mediatatem terræ, and a moiety of the lands* by a like reasonable extent.

On the delivery of the goods by the sheriff on a valuation, or appraisement by him, to the plaintiff in the writ, they became the absolute property of the latter at that price, but the one half of the lands to hold only until out of the rents and profits of them, the residue of the debt should be satisfied. It was subject, however, to no such condition, restriction, or limitation as is embodied in our statute in regard to the execution, extent and sale of real estate upon judgment recovered in this State; inasmuch, as it contains no provision requiring a previous inquisition to determine whether the moiety to be extended under it would rent for a sufficient sum, beyond all reprises, in seven years, or any other specified period of time to pay the debt, or the balance of it, after application of the goods at their appraisement. Under our statutory provisions in this regard, when the *fi. fa.* is levied on lands and after a sale of the goods, the sheriff is required, before any extent by a writ of elegit, or any sale of the lands can be made by him, to hold an inquisition to ascertain and determine whether the whole, not a moiety of the lands, will rent for a sufficient sum, beyond all reprises, to pay the debt in seven years. If they will, the plaintiff under our statute, is put to his writ of elegit to extend the whole land embraced in the preliminary inquisition, to hold the same, until out of the proceeds, rents and profits, the debt is levied and satisfied, but not to hold the same for a longer time than the period before mentioned. Under the English statute, the term for which the moiety is held for the same purpose, is indefinite, or without limitation, as to time. It is in these particulars especially, if not exclusively, the writ of elegit in England, differs from the writ of elegit in this State. The statute on which the writ is founded in that country, does not prescribe the

mode in which it shall be executed by the sheriff, but this
has been well defined and established there long since by
the practice and decisions of the Courts. Our statute,
however, goes further, and does require in express terms,
that certain things shall be done by the sheriff in execut-
ing the writ. But in these respects, it only enacts and
requires what had long before been prescribed and estab-
lished in England by the practice of the Courts and the
form of the writ there, so far as the same are applicable here
under our statutory provisions in regard to the seizure,
extent and sale of lands for debt. By the practice and
decisions of the Courts there, on entering upon the exe-
cution of the writ, the sheriff is to empanel a jury of twelve
men, who are duly sworn and qualified to make inquiry
of all the goods and chattels of the defendant and to ap-
praise the same, and also to inquire as to the seizin and
value of all his lands and tenements, which he had at the
time of the recovery of the judgment, or at any time there-
after ; and upon such inquisition, the sheriff is to deliver
all the goods and chattels, except beasts of the plough,
and a moiety of the lands to the plaintiff, and must return
the writ with such inquisition, in order that the latter may
be recorded in the Court out of which the elegit issues ;
and when the jury have found the seizin and value of the
land, it is the duty of the sheriff, and not of the jury, to set
out and deliver a moiety thereof by metes and bounds to
the plaintiff. *Cro. Car.* 819. And it has been decided there
that the inquisition ought to find the lands with certainty,
that is to say, of what estate the defendant is seized there-
in, for to find no certain estate, will be insufficient; but
if no land is returned, the sheriff, of course, can return no
inquisition, for the use of that only is to deliver a moiety
of the lands, if there are any. *Stonehouse v. Ewen, Str.* 874.
Such is the mode of proceeding in the execution of the
writ in England, under which it was formerly usual for
the sheriff there to deliver actual possession of a moiety
of the lands to the plaintiff; but after the remark made
by Ld. Kenyon C. J. in the case of *Taylor v. Cole,* 3 *T. R.*

295, that the sheriff under an *elegit* certainly could not deliver the lands extended, this practice was abandoned, and he now delivers legal possession only, and in order to obtain actual possession, the plaintiff is there put to his action of ejectment, in which he must not only prove the judgment and by the judgment roll that an elegit issued, but also, the writ of elegit itself and the inquisition thereon, for it is the elegit and the inquisition upon it, which carve out the term and give the plaintiff in it his right of entry and recovery in this action against the defendant. And this, we believe, is the only reason why the plaintiff in a writ of elegit is now put to his action of ejectment in that country to recover the actual possession of the lands extended.   Before the *dictum*, however, of Ld. Kenyon in the case referred to, it had been held there, that the sheriff, if resisted, could not deliver actual possession of the land on a writ of elegit, and that in such a case, the plaintiff would have to resort to an action of ejectment to obtain it.   Nor has the observation of Ld. Kenyon in the case of *Taylor v. Cole*, met with entire approval from the bench and bar in that country since his day, for in the case of *Rogers v. Pilcher*, 6 *Taunt.* 207, Gibbs C. J. remarks "that there is no necessity for a tenant by elegit to bring ejectment to obtain possession, but that he might enter at once, except where the tenant in possession holds under a lease of a prior date to the plaintiff's judgment."   But whatever may be the correct ruling and opinion on this point there, the sheriffs in that country, have practically settled it, by declining, since the case of *Taylor v. Cole*, to deliver the actual possession of the land to the plaintiff in the elegit, or more than the legal possession, and by reason of which he is now put to his action of ejectment there, as we have before remarked, to obtain the actual possession. *Tidd's Pr.* 941.

But as we have before said, the statute of this State contains certain express provisions in regard to the execution of the writ of elegit here, which have been supplied in England by practice and the rulings of the courts mere-

ly ; and the first of these which we shall notice, is the provision contained in *Sec.* 11 of the act, *Rev. Code* 395, which provides that if the sheriff, on entering upon lands and tenements to execute a writ of elegit, shall find the same in possession of the defendant in the writ, his executors, or administrators, or of any person holding under him, or them, or any of them, he shall remove the person, or persons so in possession, and deliver the premises to the plaintiff, or his agent, without inquiring into the defendant's title thereto.   In such a case, the only inquiry to be instituted and the only fact to be ascertained by the inquisition of the jury is, the seizin of the lands and tenements mentioned in the writ, by the defendant, his executors, or administrators, or by some one holding under him, or them, and if they find the same so in possession of the defendant in the writ, or any one holding under him, it is made the duty of the sheriff without inquiring into the title of the defendant thereto, to remove the person, or persons so in possession, and to deliver the premises to the plaintiff, or his agent; and which of course, means the actual possession, not the legal possession, or seizin of the premises merely, as is the practice now in England.   But nothing is said in this section with reference to the case provided for in it, in regard to the value of the lands and tenements, or any inquiry concerning it.   Indeed, our statute is remarkably reticent and reserved in all of its provisions on this point ; for it contains in no part of it, any express, or positive direction in relation to this matter.   All that is said in it on this subject is to be found in *Sec.* 13 of the act *Rev. Code* 395, 396, which provides that if the sheriff, upon executing a writ of elegit, shall not find the defendant, nor any person holding under him, in possession of the lands and tenements mentioned in it, he shall, upon inquiring the value of such lands and tenements, also inquire by the same jury, upon oath or affirmation, into the title of the defendant in the elegit to the premises therein mentioned, and shall certify and return such inquisition annexed to

20

the writ under which it is made; and it is only by implication and intendment that it is even mentioned in this section of the statute.

But notwithstanding the statute contains no direct and positive provision requiring an inquisition of the value of the lands by the jury on the elegit, it is undoubtedly implied and contemplated in it in analogy to the uniform practice under the writ in England from whence we have derived it; and in all cases, both in the case provided for in the eleventh section and in the case provided for in the thirteenth section of the act, the sheriff here must summon and empanel a jury to inquire and determine the annual, or rental value of the land, as it is necessary to measure the time for which the plaintiff in the writ is entitled to hold it; and this inquisition must be returned and filed, otherwise the plaintiff would have no proper, or record evidence of his title to hold the land for his term under the elegit. If the sheriff on executing the writ shall find the defendant, or any one holding under him in possession of the land, unless it be a tenant holding under a lease from him of a date prior to the recovery of the judgment, the eleventh section of the statute makes it his duty in express terms, to remove him and to deliver possession of the premises to the plaintiff, without inquiring into the defendant's title; and if any one should conceive himself aggrieved by the inquisition of the jury and this summary proceeding of the sheriff under the act, he has his remedy under *Sec.* 15 of the statute, *Rev. Code* 396, which provides that the same shall not be conclusive, but a person removed from lands and tenements under an elegit, or any other person, may maintain an ejectment, or any other proper legal remedy, for recovering possession of the premises, notwithstanding such writ and inquisition, if the same were not liable to execution for said judgment. In the case, however, provided for in the thirteenth section of the statute, that is to say, in the case where the sheriff on executing the writ, shall not find the defendant, nor any person holding under him,

in possession of the lands mentioned in the writ, if it shall be found by the inquisition of the jury that they are liable to be taken in execution on the judgment, the sheriff is not in such case to remove the person, or persons found in possession, nor to deliver the premises to the plaintiff, or his agent, but he is to make return of the writ of elegit with the inquisition annexed, according to the finding of the jury in the case; and if in such case, it shall be found that the lands mentioned in the writ are liable to be taken in execution on the judgment, the plaintiff in the writ may, on the return and filing of it and the inquisition, apply under *Sec.* 14 of the act, *Rev. Code* 396, to the court which will award a writ in the nature of a writ of *habere facias possessionem,* under which the sheriff will put the plaintiff in possession of the premises and remove such person, or persons therefrom, and all other persons who may have become possessed thereof after such inquisition.  In both of which cases it is scarcely necessary to observe, the mode of proceeding prescribed by our statute differs very materially from the practice pursued in England; for whilst by the practice there, the plaintiff would in either case be put to his action of ejectment on the return of the writ and inquisition to obtain the actual possession of the land, he is in neither case obliged to resort to it under our statute for such purpose.  In the latter case, however, that is to say, when neither the defendant, nor any one holding under him, shall be found in possession of the lands and tenements mentioned in the writ, the defendant's title thereto is to be inquired of by the jury and their finding as to the same is to be returned in the inquisition, so as to lay the grounds on which the writ in the nature of a writ of *habere facias possessionem* may be awarded as before stated. But in both cases, whether the defendant in the writ, or any one holding under him, be in possession, or a person or persons not holding under him, be in possession of the lands mentioned in it, it is equally necessary under our statute, we think, that a jury should be empanneled

by the sheriff and inquisition returned describing the lands and finding the value and seizin of them at the time of execution made, and the other facts already referred to, according to the nature of the case. In the one case, if the defendant or any one holding under him, is in possession of the land, the jury need not inquire into title, and the sheriff is to turn the defendant out and put the plaintiff in possession of it; but if neither the defendant, nor any one holding under him is in possession, then the jury, in addition to finding the fact in whom the seizin in such case may be, the value of the land and describing the same, must also inquire into the title of the defendant thereto, and if they find that it is liable to be taken in execution on the judgment against him, that is, if they find the title was in the defendant at the time of the recovery of the judgment against him, or at any time afterward, the court will, upon such return and inquisition and on application made for that purpose, award the writ to put the plaintiff in possession, as provided for in the fourteenth section of the statute.

Such, we think, is a true and correct exposition of the several provisions of our act of Assembly on the subject. The first thing to be ascertained and determined by the sheriff through the inquisition, is the seizin of the lands mentioned in the writ, whether the possession of them is in the defendant in the writ, or any person holding under him, and then the value, quantity and location of the premises, with nothing more to be done by the jury, if the fact be so found by them, except to state that they thereupon do, or do not, according as the case may be, find them liable to be taken in execution for the said judgment; but if the question of seizin is determined otherwise, and the possession is found to be in any one not holding under the defendant in the writ, then the inquiry proceeds further, and includes the title of the defendant thereto, if he has any, which should be stated and set forth in the inquisition as found by the jury, and whether in such case they also find the same liable to be

taken in execution for the debt.   But it is not sufficient for the jury in any case, as in the case now before the court, simply to return that the lands are not liable to be taken in execution for the debt, without finding or returning any thing more in regard to them.   Indeed we do not know and could not determine from the inquisition returned in this case, whether the jury ever inquired into the seizin of the land, or whether they found any one in possession of them or not, for all they inform us through the return of the sheriff is, that they found they were not liable to be taken in execution on the judgment, without stating any fact or reason whatever for such a conclusion on their part.   Every inquisition and return in such a case should disclose and contain the grounds and reasons on which the jury find that the lands are, or are not, liable to be taken in execution for the debt, as the case may be.   We must, therefore, order the rule in this case, as we remarked in the beginning, to be made absolute, and that the elegit and inquisition thereon returned in the case be set aside.